IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINE PEMBLETON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 2:20-cv-05024 |
| MACY'S INC. and MACY'S RETAIL | : | |
| HOLDINGS, INC. i/t/a MACY'S RETAIL | : | |
| HOLDINGS, LLC and SCHINDLER | : | |
| ELEVATOR CORP. and | : | |
| JOHN DOE #1 a/k/a Scott, | : | |
| JOHN DOE #2 and 3 | : | |

**ORDER**

AND NOW, this _____ day of _____ , 2020, upon consideration of

the Motion to Dismiss of Defendant, Schindler Elevator Corporation, and any response thereto, it

is hereby **ORDERED** and **DECREED** that said Motion is **GRANTED**.

Count III and Count IV of Plaintiff's Complaint are **DISMISSED**.

**BY THE COURT:**

_____
                                                                                      J.

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINE PEMBLETON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 2:20-cv-05024 |
| MACY'S INC. and MACY'S RETAIL | : | |
| HOLDINGS, INC. i/t/a MACY'S RETAIL | : | |
| HOLDINGS, LLC and SCHINDLER | : | |
| ELEVATOR CORP. and | : | |
| JOHN DOE #1 a/k/a Scott, | : | |
| JOHN DOE #2 and 3 | : | |

## **MOTION TO DISMISS OF DEFENDANT, SCHINDLER ELEVATOR CORPORATION**

Defendant, Schindler Elevator Corporation, by and through its counsel, Marshall

Dennehey Warner Coleman & Goggin, and pursuant to Federal Rule of Civil Procedure 12

(b)(6), hereby moves this Court to dismiss Count III and Count IV of Plaintiff's Complaint.  In

support its Motion, Defendant, Schindler Elevator Corporation, hereby incorporates the

accompanying Memorandum of Law.

> **MARSHALL DENNEHEY WARNER**
> **COLEMAN & GOGGIN**
>
> BY: _____
> Robert W. Stanko, Esquire
> Andrew C. Goldstein, Esquire
> Attorneys for Defendants,
> Schindler Elevator Corporation, Macy's Inc.
> and Macy's Retail Holdings, Inc. i/t/a
> Macy's Retail Holdings, LLC

Dated:  October 16, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINE PEMBLETON | : CIVIL ACTION |
| | : |
| v. | : |
| | : NO. 2:20-cv-05024 |
| MACY'S INC. and MACY'S RETAIL | : |
| HOLDINGS, INC. i/t/a MACY'S RETAIL | : |
| HOLDINGS, LLC and SCHINDLER | : |
| ELEVATOR CORP. and | : |
| JOHN DOE #1 a/k/a Scott, | : |
| JOHN DOE #2 and 3 | : |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT, SCHINDLER ELEVATOR CORPORATION

Defendant, Schindler Elevator Corporation, by and through its attorneys, Marshall Dennehey Warner Coleman & Goggin, and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves this Honorable Court to dismiss Count III and Count IV of Plaintiff's Complaint, in support thereof, submits the following:

## INTRODUCTION

Plaintiff initiated the instant action by the filing of a Complaint on September 1, 2020.  A true and correct copy of the Complaint is attached hereto as Exhibit "A."  Plaintiff names the following defendants: Macy's, Inc.; Macy's Retail Holdings, Inc. i/t/a Macy's Retail Holdings, LLC; and, Schindler Elevator Corp. ("Schindler").[1]  The defendants removed this case to this Court on October 9, 2020.

In the Complaint, Plaintiff alleges that she sustained personal injuries at a Macy's store located in Bucks County, Pennsylvania.  Specifically, Plaintiff alleges: "Plaintiff Christine Pembleton was shopping at Macy's . . . when suddenly and without warning, the defective and

---

[1] Plaintiff also names John and Jane Does.

unsafe escalator she was a passenger on caught her skirt, entrapped and pulled her down, and repeatedly struck her over a period of several minutes." *See* Ex. A, ¶11.

Plaintiff alleges that Schindler designed and manufactured the subject escalator. *See* Ex. A, ¶3. Based on the foregoing allegations, Plaintiff includes two products liability counts against Schindler: Count III (strict liability) and Count IV (breach of warranty). Plaintiff's claims must fail, as Schindler did not design, manufacture, or supply the subject escalator. Rather, Otis Elevator Company manufactured the subject escalator. A photograph identifying Otis Elevator Company as the manufacturer of the subject escalator is attached hereto as Exhibit "B." Because Schindler did not design, manufacture, or supply the subject escalator, Plaintiff cannot establish the threshold requirement to advance claims in products liability. Schindler now moves this Court to dismiss all products liability claims against it.

## ARGUMENT

Plaintiff's Complaint contains two products liability counts against Schindler: Count III (strict liability) and Count IV (breach of warranty). Both counts are predicated on the allegations that Schindler designed and manufactured the subject escalator. Pennsylvania law dictates that "a company that neither manufactured nor supplied the defective product is not liable under a theory of strict liability or failure to warn." *Callender v. Brighton Mach. Co*., No. 755 WDA 2013, 2014 WL 10575351, at *8 (Pa. Super. Ct. Sept. 17, 2014). "To successfully litigate a products liability suit, section 402A(1) requires a party to assert a product or component was in a defective condition as sold." *Micciche v. E. Elevator Co*., 645 A.2d 278, 280 (Pa. Super. Ct. 1994).

Here, Schindler did not design, manufacture, or supply the subject escalator. Otis Elevator Company manufactured the subject escalator, as confirmed by the attached photograph.

*See* Ex. B.  For this simple reason, Plaintiff's products liability claims against Schindler must be dismissed.

Schindler recognizes that it is relying on information not contained in Plaintiff's Complaint.  However, courts of this circuit have permitted use of such information when it is deemed reliable.  *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); *Werner v. Werner*, 267 F.3d 288, 295 (3d Cir. 2001) ("A judicially noticed fact must either be generally known within the jurisdiction of the trial court, or be capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

In the instant matter, it is appropriate for this Court to consider the photograph, as it directly relates to the allegations contained in Plaintiff's Complaint and speaks for itself (i.e., its accuracy cannot be questioned).  In such circumstances, and in order to promote judicial efficiency, it is appropriate for the Court to convert the instant motion into a motion for summary judgment.  *See Kulwicki v. Dawson*, 969 F.2d 1454, 1463 n.11 (3d Cir. 1992) ("[T]he decision to convert a motion to dismiss to a motion for summary judgment is generally committed to the district court's discretion under [Rule] 56[.]").[2]

When analyzed as a motion for summary judgment, it is clear that the instant motion should be granted.  Plaintiff cannot sustain products liability claims against Schindler because Schindler did not design, manufacture, or supply the subject escalator.  *See Zielinski, v. Mega Manufacturing, Inc.*, et al., No. 2:18-CV-05113-JDW, 2020 WL 5993626, at *2 (E.D. Pa. Oct. 9,

---

[2] *See also Rodenbaugh v. Santiago*, No. CV 16-2158, 2017 WL 194238, at *8 (E.D. Pa. Jan. 18, 2017) ("As such, the court finds it necessary and in the interest of judicial economy to convert [the defendant's] motion to dismiss to a motion for summary judgment.  Since this opinion will provide the parties with notice of the conversion, the court will grant them twenty (20) days leave to file all material that they believe is relevant to [the instant] motion.").

2020) (granting summary judgment as to strict lability and failure to warn claims in favor of a machine manufacturer because it did not manufacture, supply, or sell the product causing injury).

## CONCLUSION

For the reasons set forth above, Schindler hereby requests that this Honorable Court dismiss Count III and Count IV of Plaintiff's Complaint and enter the proposed Order attached hereto.

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

BY: _____
       Robert W. Stanko, Esquire
       Andrew C. Goldstein, Esquire
       Attorneys for Defendants,
       Schindler Elevator Corporation, Macy's Inc.
       and Macy's Retail Holdings, Inc. i/t/a
       Macy's Retail Holdings, LLC

Dated: _ October 16, 2020 _____

Case 2:20-cv-05024-CMR   Document 6   Filed 10/16/20   Page 7 of 34

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that a true and correct copy of the foregoing Motion to Dismiss of

Defendant, Schindler Elevator Corporation, was sent via the Court's electronic filing system to

the following counsel of record:

> Thomas E. Copain, Esquire
> Robert A. Huber Esquire
> Huber & Palsir, LLC
> 461 N. 3rd Street, 2nd Floor
> Philadelphia, PA 19123

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

BY: _____

> Robert W. Stanko, Esquire
> Andrew C. Goldstein, Esquire
> Attorneys for Defendants,
> Schindler Elevator Corporation, Macy's Inc.
> and Macy's Retail Holdings, Inc. i/t/a
> Macy's Retail Holdings, LLC

Dated:  October 16, 2020

# EXHIBIT "A"

**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**COURT OF COMMON PLEAS OF PHILADELPHIA**

*Filed and Attested by the*
*Office of Judicial Records*
*01 SEP 2020 05:32 pm*
*A. SILIGRINI*

| | | |
|---|---|---|
| **CHRISTINE PEMBLETON** | : | |
| 6060 Alma Street | : | |
| Philadelphia, PA 19149 | : | |
| vs. | : | **AUGUST TERM 2020** |
| **MACY'S INC. and** | : | |
| **MACY'S RETAIL HOLDINGS, INC.** | : | |
| i/t/a MACY'S RETAIL HOLDINGS, LLC: | | **NO.** |
| and SCHINDLER ELEVATOR CORP. | : | |
| and JOHN DOE #1 a/k/a Scott, | : | |
| JOHN DOE #2 and 3 | : | |
| 2300 Lincoln Highway, Suite 4 | : | |
| Langhorne, PA 19047 | : | |

## NOTICE TO DEFEND

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*

**Philadelphia Bar Association**
**Lawyer Referral**
**and Information Service**
**One Reading Center**
**Philadelphia, Pennsylvania 19107**
**(215) 238-6333**
**TTY (215) 451-6197**

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

*Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.*

**Asociacion De Licenciados**
**De Filadelfia**
**Servicio De Referencia E**
**Informacion Legal**
**One Reading Center**
**Filadelfia, Pennsylvania 19107**
**(215) 238-6333**
**TTY (215) 451-6197**

10-284

**HUBER & PALSIR, LLC**
**BY: ROBERT A. HUBER, ESQUIRE**
    **THOMAS E. COPAIN, ESQUIRE**
**IDENTIFICATION NO.s: 58948/322039**
**461 N. 3rd Street, 2nd floor**
**PHILADELPHIA, PA 19123**
**(215) 627-0676**
**rhuber@myhplaw.com - email**

**MAJOR TRIAL**

**ATTORNEYS FOR PLAINTIFF**

| | |
|---|---|
| **CHRISTINE PEMBLETON** : | **COURT OF COMMON PLEAS** |
| **6060 Alma Street** : | **PHILADELPHIA COUNTY** |
| **Philadelphia, PA 19149** : | |
|      **vs.** : | **AUGUST**    **TERM 2020** |
| **MACY'S RETAIL HOLDINGS, INC.** : | |
| **i/t/a MACY's RETAIL HOLDINGS, LLC:** | |
| **2300 Lincoln Highway, Suite 4** : | **NO.:** |
| **Langhorne, PA 19047** : | |
|     **and** : | |
| **MACY'S, INC.** : | |
| **151 West 34th Street** : | |
| **New York, NY 10001** : | |
|     **and** : | |
| **SCHINDLER ELEVATOR CORP.** : | |
| **20 Whippany Road** : | |
| **Morristown, NJ 07960** : | |
|     **and** : | |
| **JOHN DOE #1  a/k/a Scott,** : | |
| **JOHN DOE #2 and 3** : | |
| **JANE DOEs 1, 2 and 3** : | |
| **2300 Lincoln Highway, Suite 4** : | |
| **Langhorne, PA 19047** : | |

## CIVIL ACTION - CODE NO.2S – PRODUCT LIABILITY

1.  Plaintiff, Christine Pembleton, is an adult individual who resides at the above captioned

address.

2.  Defendant, Macy's Inc. and Macy's Macy's Retail Holdings, Inc. i/t/a Macy's Retail

Holdings, LLC (hereinafter  collectively referred to as  the "Macy's" defendants) are

corporation(s) and/or business entity(ies) which regularly do  business in the Commonwealth of

Pennsylvania and in the City and County of Philadelphia. In addition, the Macy's Defendants do

business at the Oxford Valley Mall, 2300 Lincoln Highway in Langhorne, PA. At all times material hereto Macy's was in possession, custody and control of said premises, including its escalators.

3.  Defendant, Schindler Elevator Corporation, is a foreign corporation duly authorized to conduct business in the Commonwealth of Pennsylvania and which regularly conducts business in the City and County of Philadelphia. Upon information and belief, at all times material hereto, this defendant installed, maintained,, serviced, manufactured, designed and/or repaired the escalator in question located at the Macy's store located at the Oxford Valley Mall, 2300 Lincoln Highway, in Langhorne, PA. pursuant to a contract with Macy's.

4.  Defendant John Doe 1 a/k/a Scott , is an adult individual who, upon information and belief resides in Pennsylvania and who at all times material hereto was responsible for hiring Macy's security personnel, Macy's staff, and/or Macy's representative(s), agent(s), servants, personnel, workman and/or employees working at the Macy's location at the Oxford Valley Mall 2300 East Lincoln Highway in Langhorne, PA.

5.  Defendant John Doe 2 is an adult individuals who, upon information and belief resides in Pennsylvania and who at all times material hereto worked as Macy's security personnel, Macy's staff, and/or Macy's representative(s), agent(s), servants workman and/or employees working at the Macy's location at the Oxford Valley Mall 2300 East Lincoln Highway in Langhorne, PA at all times material hereto.

6.  Defendant John Doe 3 is an adult individual who upon information and belief resides in Pennsylvania and who at all times material hereto worked for Schindler Elevator Corporation and was responsible for maintaining, servicing, repairing, installing, and for keeping the

escalator in question in safe and proper working order at the Macy's store located at the Oxford Valley Mall 2300 East Lincoln Highway in Langhorne, PA at all times material hereto.

7.     Defendants Jane Doe 1, 2 and 3 are adult individuals who reside in Pennsylvania and who were Macy's security personnel, Macy's staff, and/or Macy's representative(s), agent(s), servants workman and/or employees working at the Macy's location at the Oxford Valley Mall 2300 East Lincoln Highway in Langhorne, PA at all times material hereto.

8.     Upon information and belief, each defendant owned, operated, leased, maintained, repaired, serviced, installed, inspected, controlled, and/or maintained the right to control the escalators and/or their emergency shutoff function at the Macy's store located at 2300 Lincoln Highway, Suite 4 in Langhorne, PA.

9.     Each defendant knew and/or should have known before Plaintiff's accident on October 3, 2018 that the escalator at the Macy's Store located at the Oxford Valley Mall, 2300 Lincoln Highway in Langhorne, PA which Plaintiff was in an unsafe, defective and/or dangerous condition, that it was not safe for passenger use and each defendant failed to do so, and/or notify escalator passengers of same.

10.     Each defendant acted by and through its/his/her authorized agents, servants, workmen and/or employees who were acting within the course and scope of their employment and/or authority with one another at all times material hereto.

11.     On or about October 3, 2018, Plaintiff Christine Pembleton was shopping at Macy's Oxford Valley Mall store located at 2300 Lincoln Highway in Langhorne, PA. when suddenly and without warning, the defective and/or unsafe escalator she was a passenger on caught her skirt, entrapped and pulled her down, and repeatedly struck her over a period of several minutes during which time each defendant failed to stop, correct or remedy said hazardous and injurious

condition,  causing Plaintiff serious and/or permanent injuries to her neck, head, back right ankle, leg  and/or as hereinafter more fully set forth.

12.  At all times material hereto, Plaintiff used the escalator in question in the manner in which it was intended to be used, and at all times pertinent hereto, the occurrence described herein was not caused by any act or failure to act on the part of Plaintiff.

13.  As a direct and proximate result of the aforementioned accident, Plaintiff suffered serious  and/or permanent  injuries including but not limited to: back contusion; concussion with associated headache; post traumatic headache; post traumatic vertigo; cervical spine ligaments sprain; severe damage to her nerves and nervous system and diverse other ills and injuries.

14.  As a direct result of the aforementioned accident, Plaintiff has in the past and/or may in the  future suffer a loss of earnings, and a loss of earning capacity, all to her great loss and detriment.

15.  As a direct result of the aforementioned accident, plaintiff has  in the past and may continue to receive and will in the future be required to incur the costs of medical care, hospitalization, medication, future surgery, diagnostic testing and rehabilitation in an attempt to cure and/or alleviate her injuries and conditions resulting from this accident, all to her great loss and detriment.

16.  At all times material hereto,  each defendant  owed  plaintiff a duty to install, inspect, service, repair, maintain and/or monitor the escalator in question and to make sure it was safe for use by plaintiff and each defendant failed  to do so.

17. Each defendant knew or should have expected that persons such as plaintiff would not discover and/or realize that the escalator in question was in a dangerous and/or unsafe condition and each defendant failed to protect persons such as plaintiff against it.

18. Each defendant owed a duty to plaintiff to ensure that the escalator in question which it/he/she/they provided for its intended users was in a safe, non-hazardous condition at all times.

19. Each defendant knew or should have been aware of the escalator's operation and safety features, including but not limited to the location and/or use of the escalator's emergency stop function, and therefore had a duty to properly educate, train and inspect its agents, employees, servants, workmen and/or contractors of same.

20. At all times material hereto, each defendant, jointly and/or severally, maintained certain responsibilities duties and obligations for the aforementioned escalator in question, which it/he/she/they breached, including:

       a. designing, installing, and/or manufacturing a safe and non-hazardous escalator for use by customers including Plaintiff;

       b. properly and timely testing, servicing, maintaining, repairing and/or inspecting the escalator in question;

       c. promulgating, implementing, using and/or enforcing all required escalator safety measures, including timely and regular inspection and monitoring of said escalator;

       d. ensuring that no escalator be put into operation unless it was safe and proper working order;

       e. having and/or requiring proper safety features and/or safety measures for said escalator at all times.

       f. the duty to report, timely report and/or timely correct operational and/or safety problems with this escalator type or model;

       g. providing properly trained, qualified, experienced, and skilled employees, representatives, or agent(s) to inspect, install, repair, maintain, service, and monitor the escalator in question;

> h. having an escalator with property safety features, measures and/or devices to prevent it from catching a passenger's clothing;

21. As a direct result of the aforementioned accident, Plaintiff has in the past and may in the future continue to suffer pain, mental anguish, humiliation, embarrassment, fear, loss of well-being, loss of life's pleasures, restrictions in her ability to perform life's normal activities, duties and avocations which may continue indefinitely into the future, all to her great loss and detriment.

22. The aforementioned accident, injuries and other damages to plaintiff would not have occurred but for the joint and/or several carelessness and negligence of each defendant.

23. The aforesaid accident and resulting injuries and damages to plaintiff were in no manner caused by plaintiff, Christine Pembleton.

24. Venue is proper in Philadelphia County as the Corporate Defendants regularly do business in the City and County of Philadelphia and one or more of the John Doe/Jane doe defendants live in Pennsylvania and Plaintiff resides in Philadelphia.

## COUNT I
## CHRISTINE PEMBLETON v. MACY'S

25. Plaintiff incorporates by reference the preceding paragraphs as though same were fully set forth at length herein.

26. The aforesaid accident and injuries to Plaintiff resulting therefrom were caused by the negligence, carelessness, acts and/or omissions of the Macy's defendants, which consisted of the following;

> a. Allowing an escalator which it knew or should have known was in an unsafe, defective and/or dangerous condition to be and remain in service at all times relevant hereto;
>
> b. Failing to inspect, timely inspect, monitor and/or timely monitor its escalator(s);
>
> c. Failing to perform timely and/or regular preventive maintenance on the escalator in question;

d. Failing to properly maintain, service, refurbish, retrofit and/or repair the escalator in question prior to the accident in question;

e. Failing to hire, retain and/or utilize competent, properly trained, qualified, skilled, and/or experienced escalator maintenance personnel, mechanics, technicians, installers, servicemen and/or repairmen to install, service, maintain, repair, refurbish, retrofit, and/or work on the escalator in question;

f. Causing the escalator in question to be and/or remain in a dangerous, defective and/or unsafe condition at all times material hereto by virtue of inadequate escalator warnings.

g. Failing to make and/or perform necessary, timely escalator renovations, retrofits, service, repair or part replacement(s) for the elevator in question;

h. Failing to require and/or provide appropriate education, instruction, training, supervision, management and/or direction to its employees, agents, servants, workmen, employees, agents, and/or contractors responsible for the maintenance, service, repair, upkeep and safety of the escalator in question;

i. Failing promulgate, implement, use, follow and/or enforce appropriate education, instruction, training, supervision, management and/or direction to its employees, agents, servants, workmen and/or contractors responsible for proper safety and emergency procedures, including but not limited to knowing the location of and properly utilizing the emergency stop function in a timely manner;

j. Failing to promulgate, implement, use, follow and/or enforce Store Accident and/or Safety Policies, Procedures, Rules, Training, Guidelines, Manuals, Warnings and/or Precautions including but not limited to those pertaining to escalator safety;

k. Failing to perform or timely perform escalator inspection, monitoring, preventive maintenance,: operation, repair, modernization, refurbishment retrofit and/or renovation;

l. Failing to perform a timely risk assessment of the escalator in question;

m. Failing to follow industry standards and/or requirements in the maintenance, repair, inspection and monitoring of the escalator in question;

n. Failing to have adequate staffing of its store

o. Failing to hire and/or utilize properly qualified person(s) to service, repair and/or maintain the escalator in question;

p.  Hiring and/or retaining persons to perform service, repair, and/or maintenance of the escalator in question who were not properly qualified, competent, skilled, knowledgeable and/or trained to work on the escalator in question;

q.  Failing to timely adopt and/or employ proper and adequate safety precautions to prevent, avoid and/or mitigate the accident in question;

r.  Failing to have an adequate  safety training manual, safety policies or safety procedures for  the escalator in question;;

s.  Allowing an escalator with unsafe and dangerous features such as gaps in steps and/o step sides to be and remain at the premises;

t.  Failing to utilize available security measures, safety plates, and/or features on said escalator which would have prevented and/or mitigated the accident and its consequences;

u.  Failing to have proper and/or adequate warnings of the dangers of the escalator in question.

27. By conducting itself as set forth above, the Macy's defendants acts and/or omissions as set forth above were a substantial factor in, and a factual cause of Plaintiff's aforementioned accident and the serious and/or permanent injuries and damages she suffered..

**WHEREFORE,** Plaintiff Christine Pembleton demands judgment in her favor and against the Macy's defendants, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), exclusive of interest and costs.

## COUNT II
## CHRISTINE PEMBLETON V. SCHINDLER ELEVATOR CORPORATION
## (NEGLIGENCE)

28. Plaintiff incorporates by reference the preceding paragraphs as though same were fully set forth at length herein.

29. The aforementioned accident and Plaintiff's resulting injuries were caused by the defendant's negligence, carelessness, acts and/or omissions in its design, construction,

manufacture, distribution, supply, selling, installation, service, inspection, maintenance, and/or

repair of the said escalator and/or its component parts, which consisted of the following:

    a. Allowing an escalator which it knew or should have known was in an unsafe, defective and/or dangerous condition to be and remain in service at all times relevant hereto;

    b. Failing to inspect, timely inspect, monitor and/or timely monitor its escalator(s);

    c. Failing to perform timely and/or regular preventive maintenance on the escalator in question;

    d. Failing to properly maintain, service, refurbish, retrofit and/or repair the escalator in question prior to the accident in question;

    e. Failing to hire, retain and/or utilize competent, properly trained, qualified, skilled, and/or experienced escalator maintenance personnel, mechanics, technicians, installers, servicemen and/or repairmen to install, service, maintain, repair, refurbish and/or work on the escalator in question;

    f. Causing the escalator in question to be and/or remain in a dangerous, defective and/or unsafe condition at all times material hereto by virtue of inadequate escalator warnings.

    g. Failing to make and/or perform necessary, timely escalator renovations, retrofits, service, repair or part replacement(s) for the elevator in question;

    h. Failing to require and/or provide appropriate education, instruction, training, supervision, management and/or direction to its employees, agents, servants, workmen, employees, agents, and/or contractors responsible for the maintenance, service, repair, upkeep and safety of the escalator in question;

    i. Failing promulgate, implement, use, follow and/or enforce appropriate education, instruction, train ing, supervision, management and/or direction to its employees, agents, servants, workmen and/or contractors responsible for proper safety and emergency procedures, including but not limited to knowing the location of and properly utilizing the emergency stop function in a timely manner;

    j. Failing to promulgate, implement, use, follow and/or enforce Store Accident and/or Safety Policies, Procedures, Rules, Training, Guidelines, Manuals, Warnings and/or Precautions including but not limited to those pertaining to escalator safety;

k.   Failing to perform or timely perform escalator inspection, monitoring, preventive maintenance,: operation, repair, modernization, refurbishment retrofit and/or renovation;

l.   Failing to perform a timely risk assessment of the escalator in question;

m.  Failing to follow industry standards and/or requirements in the maintenance, repair, inspection and monitoring of the escalator in question;

n.   Failing to have adequate staffing of its store

o.   Failing to hire and/or utilize properly qualified person(s) to service, repair and/or maintain the escalator in question;

p.   Hiring and/or retaining persons to perform service, repair, and/or maintenance of the escalator in question who were not properly qualified, competent, skilled, knowledgeable and/or trained to work on the escalator in question;

q.   Failing to timely adopt and/or employ proper and adequate safety precautions to prevent, avoid and/or mitigate the accident in question;

r/   Failing to have an adequate  safety training manual, safety policies or safety procedures for  the escalator in question;;

s.   Allowing an escalator with unsafe and dangerous features such as gaps in steps and/o step sides to be and remain at the premises;

t.   Failing to utilize available security measures, safety plates, and/or features on said escalator which would have prevented and/or mitigated the accident and its consequences;

u.   Failing to have proper and/or adequate warnings of the dangers of the escalator in question.

30. By conducting itself as set forth above, defendant Schindler Escalator Corporation's acts

and/or omissions as set forth above were a substantial factor in, and a factual cause of

Plaintiff's aforementioned accident and her serious and/or permanent injuries and damages.

**WHEREFORE,** Plaintiff Christine Pembleton demands judgment in her favor and

against Defendant, Schindler Elevator Corporation, jointly and severally, in an amount in excess

of Fifty Thousand Dollars ($50,000.00), exclusive of interest and costs.

## COUNT III
## CHRISTINE PEMBLETON V. SCHINDLER ELEVATOR CORPORATION
### (STRICT LIABILITY)

31. Plaintiff incorporates by reference the preceding paragraphs as though same were fully set forth at length herein.

32. Defendant, Schindler Escalator Corporation, at all times material hereto, did design, construct, manufacture, modernize, label, inspect, repair, maintain, overhaul, assemble and/or distribute or otherwise place into the stream of commerce the aforementioned escalator which injured plaintiff.

33. At the time of its manufacture, construction, distribution and/or sale, the aforesaid escalator was defective, unreasonably dangerous and unfit and unsafe for its intended uses and purposes rendering it unreasonably dangerous.

34. The aforesaid escalator was defective in its design, manufacture, and construction in that it, among other things, was designed manufactured and constructed: without proper safety devices to prevent a rider from becoming entrapped in the track, step grooves, step mechanism, outer decking and/or comb plate.

35. At the time of design, manufacture, construction, distribution, and/or sale, the aforesaid escalator failed to contain proper and sufficient warnings, cautions and/or instructions, rendering the aforesaid escalator defective, unreasonably dangerous and unfit and unsafe for its intended uses and purposes.

36. On or about October 3, 2018, the aforesaid escalator was in the same or substantially similar condition as it was when manufactured, distributed, and/or sold by said defendant.

37. Said defendant designed, manufactured, constructed, labeled, sold, distributed, supplied, installed, repaired, inspected and maintained the escalator in a defective condition, dangerous to

its purchaser and to the ultimate user or consumer and is strictly liable to plaintiff pursuant to Section 402A of the Restatement (Second) of Torts.

38. As a direct and proximate result of the aforementioned defects and dangerous condition(s), plaintiff has suffered the severe and permanent injuries which were set forth at length herein above.

39. By conducting itself as set forth above, defendant Schindler Elevator Corporation's acts and/or omissions as set forth above were a substantial factor in, and a factual cause of Plaintiff's aforementioned accident and her serious and/or permanent injuries and damages.

**WHEREFORE,** Plaintiff Christine Pembleton demands judgment in her favor and against Defendant, Schindler Elevator Corporation, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), exclusive of interest and costs.

## COUNT IV
## CHRISTINE PEMBLETON V. SCHINDLER ELEVATOR CORPORATION
### (BREACH OF WARRANTY)

40. Plaintiff incorporates by reference the preceding paragraphs as though same were fully set forth at length herein

41. At all times material hereto, said Defendant did expressly and impliedly warrant that the aforesaid escalator, and all of its component parts, were of merchantable condition at the time it was sold and that it was fit for its intended purpose when sold and/or used for its intended purpose(s).

42. Defendant Schindler Elevator Corporation breached said expressive and/or implied warranties in that the aforesaid escalator was defective, hazardous, unsafe, unfit for its intended use and not properly and reasonably merchantable and was unfit for its intended, ordinary foreseeable use and purpose.

43. As a direct and proximate result of the aforementioned defects and dangerous condition(s), plaintiff has suffered the severe and painful injuries which were set forth at length herein above.

44. By conducting itself as set forth above, defendant Schindler Elevator Corporation's acts and/or omissions as set forth above were a substantial factor in, and a factual cause of Plaintiff's aforementioned accident and her serious and/or permanent injuries and damages.

**WHEREFORE,** Plaintiff Christine Pembleton demands judgment in her favor and against Defendant, Schindler Elevator Corporation, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00), exclusive of interest and costs.

## COUNT V
## CHRISTINE PEMBLETON v. JOHN DOE 1 and 2
## (NEGLIGENCE)

45. Plaintiff incorporates by reference the preceding paragraphs as if same were fully set Forth at length herein.

46. The carelessness, negligence acts and omissions of John Doe 1 a/k/a Scott and John Doe 2, who upon information and belief worked in management for Macy's at the Macy'sstore in question at all times material hereto consisted of the following:

  a. Allowing an escalator which it knew or should have known was in an unsafe, defective and/or dangerous condition to be and remain in service at all times relevant hereto;

  b. Failing to inspect, timely inspect, monitor and/or timely monitor its escalator(s);

  c. Failing to perform timely and/or regular preventive maintenance on the escalator in question;

  d. Failing to properly maintain, service, refurbish, retrofit and/or repair the escalator in question prior to the accident in question;

e.  Failing to hire, retain and/or utilize competent, properly trained, qualified, skilled, and/or experienced escalator maintenance personnel, mechanics, technicians, installers, servicemen and/or repairmen to install, service, maintain, repair, refurbish, retrofit, and/or work on the escalator in question;

f.  Causing the escalator in question to be and/or remain in a dangerous, defective and/or unsafe condition at all times material hereto by virtue of inadequate escalator warnings.

g.  Failing to make and/or perform necessary, timely escalator renovations, retrofits, service, repair or part replacement(s) for the elevator in question;

h.  Failing to require and/or provide appropriate education, instruction, training, supervision, management and/or direction to its employees, agents, servants, workmen, employees, agents, and/or contractors responsible for the maintenance, service, repair, upkeep and safety of the escalator in question;

i.  Failing promulgate, implement, use, follow and/or enforce appropriate education, instruction, training, supervision, management and/or direction to its employees, agents, servants, workmen and/or contractors responsible for proper safety and emergency procedures, including but not limited to knowing the location of and properly utilizing the emergency stop function in a timely manner;

j.  Failing to promulgate, implement, use, follow and/or enforce Store Accident and/or Safety Policies, Procedures, Rules, Training, Guidelines, Manuals, Warnings and/or Precautions including but not limited to those pertaining to escalator safety;

k.  Failing to perform or timely perform escalator inspection, monitoring, preventive maintenance,: operation, repair, modernization, refurbishment retrofit and/or renovation;

l.  Failing to perform a timely risk assessment of the escalator in question;

m.  Failing to follow industry standards and/or requirements in the maintenance, repair, inspection and monitoring of the escalator in question;

n.  Failing to have adequate staffing of its store

o.  Failing to hire and/or utilize properly qualified person(s) to service, repair and/or maintain the escalator in question;

p.  Hiring and/or retaining persons to perform service, repair, and/or maintenance of the escalator in question who were not properly qualified, competent, skilled, knowledgeable and/or trained to work on the escalator in question;

q. Failing to timely adopt and/or employ proper and adequate safety precautions to prevent, avoid and/or mitigate the accident in question;

r. Failing to have an adequate safety training manual, safety policies or safety procedures for the escalator in question;;

v. Allowing an escalator with unsafe and dangerous features such as gaps in steps and/o step sides to be and remain at the premises;

w. Failing to utilize available security measures, safety plates, and/or features on said escalator which would have prevented and/or mitigated the accident and its consequences;

x. Failing to have proper and/or adequate warnings of the dangers of the escalator in question.

**WHEREFORE,** Plaintiff Christine Pembleton demands judgment in her favor and

against Defendant, John Doe Defendants 1 and 2, jointly and severally, in an amount in excess of

Fifty Thousand Dollars ($50,000.00), exclusive of interest and costs.

## COUNT VI
## CHRISTINE PEMBLETON v. JOHN DOE 3
## (NEGLIGENCE)

47. Plaintiff incorporates by reference the preceding paragraphs as if same were fully set

Forth at length herein.

48. The carelessness, negligence, acts and omissions of John Doe 3 who worked for

Schindler Elevator Company and performed work on the elevator in question at Macy's

including service, maintenance, installation and repair at all times material hereto consisted of

the following:

a. Allowing an escalator which it knew or should have known was in an unsafe, defective and/or dangerous condition to be and remain in service at all times relevant hereto;

b. Failing to inspect, timely inspect, monitor and/or timely monitor its escalator(s);

c. Failing to perform timely and/or regular preventive maintenance on the escalator in question;

d. Failing to properly maintain, service, refurbish, retrofit and/or repair the escalator in question prior to the accident in question;

e. Failing to hire, retain and/or utilize competent, properly trained, qualified, skilled, and/or experienced escalator maintenance personnel, mechanics, technicians, installers, servicemen and/or repairmen to install, service, maintain, repair, refurbish, retrofit, and/or work on the escalator in question;

f. Causing the escalator in question to be and/or remain in a dangerous, defective and/or unsafe condition at all times material hereto by virtue of inadequate escalator warnings.

g. Failing to make and/or perform necessary, timely escalator renovations, retrofits, service, repair or part replacement(s) for the elevator in question;

h. Failing to require and/or provide appropriate education, instruction, training, supervision, management and/or direction to its employees, agents, servants, workmen, employees, agents, and/or contractors responsible for the maintenance, service, repair, upkeep and safety of the escalator in question;

i. Failing promulgate, implement, use, follow and/or enforce appropriate education, instruction, training, supervision, management and/or direction to its employees, agents, servants, workmen and/or contractors responsible for proper safety and emergency procedures, including but not limited to knowing the location of and properly utilizing the emergency stop function in a timely manner;

j. Failing to promulgate, implement, use, follow and/or enforce Store Accident and/or Safety Policies, Procedures, Rules, Training, Guidelines, Manuals, Warnings and/or Precautions including but not limited to those pertaining to escalator safety;

k. Failing to perform or timely perform escalator inspection, monitoring, preventive maintenance,: operation, repair, modernization, refurbishment retrofit and/or renovation;

l. Failing to perform a timely risk assessment of the escalator in question;

m. Failing to follow industry standards and/or requirements in the maintenance, repair, inspection and monitoring of the escalator in question;

n. Failing to have adequate staffing of its store

o. Failing to hire and/or utilize properly qualified person(s) to service, repair and/or

maintain the escalator in question;

p. Hiring and/or retaining persons to perform service, repair, and/or maintenance of the escalator in question who were not properly qualified, competent, skilled, knowledgeable and/or trained to work on the escalator in question;

q. Failing to timely adopt and/or employ proper and adequate safety precautions to prevent, avoid and/or mitigate the accident in question;

r. Failing to have an adequate safety training manual, safety policies or safety procedures for the escalator in question;;

s. Allowing an escalator with unsafe and dangerous features such as gaps in steps and/o step sides to be and remain at the premises;

t. Failing to utilize available security measures, safety plates, and/or features on said escalator which would have prevented and/or mitigated the accident and its consequences;

v. Failing to have proper and/or adequate warnings of the dangers of the escalator in question.

**WHEREFORE,** Plaintiff Christine Pembleton demands judgment in her favor and

against Defendant, John Doe Defendant 3, jointly and severally, in an amount in excess of Fifty

Thousand Dollars ($50,000.00), exclusive of interest and costs.

## COUNT VIII
## CHRISTINE PEMBLETON v. JANE DOE 1-3
## (NEGLIGENCE)

49. Plaintiff incorporates by reference the preceding paragraphs as if same were fully set

Forth at length herein.

50. The carelessness, negligence, acts and omissions of Jane Does 3 who worked for

The Macy's defendants as staff and or Macy's security at all times material hereto consisted of

the following:

a. Allowing an escalator which she knew or should have known was in an unsafe, defective and/or dangerous condition to be and remain in service at all times relevant hereto;

b.  Failing to inspect, timely inspect, monitor and/or timely  monitor its escalator(s);

c.  Failing to perform timely and/or regular preventive maintenance on the escalator in question;

d.  Failing to properly maintain, service, refurbish, retrofit and/or repair the escalator in question prior to the accident in question;

e.  Failing to hire, retain and/or utilize competent, properly trained, qualified, skilled, and/or experienced escalator maintenance personnel, mechanics, technicians, installers, servicemen and/or repairmen to install, service, maintain, repair, refurbish, retrofit, and/or work on the escalator in question;

f.  Causing the escalator in question to be and/or remain in a dangerous, defective and/or unsafe condition at all times material hereto by virtue of inadequate escalator warnings.

g.  Failing to make and/or perform necessary, timely escalator renovations, retrofits, service, repair or part  replacement(s) for the elevator in question;

h.  Failing to require and/or provide appropriate education, instruction, training, supervision, management and/or direction to  its employees, agents, servants, workmen, employees, agents, and/or contractors responsible for the maintenance, service, repair, upkeep and safety of the escalator in question;

i.  Failing promulgate, implement, use, follow and/or enforce appropriate education, instruction, training, supervision, management and/or direction to its employees, agents, servants, workmen and/or contractors responsible for proper safety and emergency procedures, including but not limited to knowing the location of and properly utilizing the emergency stop function in a timely manner;

j.  Failing to promulgate, implement, use, follow and/or enforce Store Accident and/or Safety Policies, Procedures, Rules, Training, Guidelines, Manuals, Warnings and/or Precautions including but not limited to those pertaining to escalator safety;

k.   Failing to perform or timely perform escalator inspection, monitoring, preventive maintenance,: operation, repair, modernization, refurbishment retrofit and/or  renovation;

l.  Failing to perform a timely risk assessment of the escalator in question;

m. Failing to follow industry standards and/or requirements in the maintenance, repair, inspection and monitoring of the escalator in question;

n.  Failing to have adequate staffing of its store

o.  Failing to hire and/or utilize properly qualified person(s) to service, repair and/or maintain the escalator in question;

p.  Hiring and/or retaining persons to perform service, repair, and/or maintenance of the escalator in question who were not properly qualified, competent, skilled, knowledgeable and/or trained to work on the escalator in question;

q.  Failing to timely adopt and/or employ proper and adequate safety precautions to prevent, avoid and/or mitigate the accident in question;

r.  Failing to have an adequate  safety training manual, safety policies or safety procedures for  the escalator in question;;

y.  Allowing an escalator with unsafe and dangerous features such as gaps in steps and/o step sides to be and remain at the premises;

z.  Failing to utilize available security measures, safety plates, and/or features on said escalator which would have prevented and/or mitigated the accident and its consequences;

aa. Failing to have proper and/or adequate warnings of the dangers of the escalator in question.

**WHEREFORE,** Plaintiff Christine Pembleton demands judgment in her favor and

against Defendant, Jane Doe Defendants 1-3, jointly and severally, in an amount in excess of

Fifty Thousand Dollars ($50,000.00), exclusive of interest and costs.

**HUBER & PALSIR, LLC**

BY: 

ROBERT A. HUBER, ESQUIRE
Attorney for Plaintiff
Christine Pembleton

Dated: September 1, 2020

## VERIFICATION

The undersigned, having read the attached pleading, hereby verifies that the within pleading is based on information furnished to counsel, which information has been gathered by counsel in the course of this law suit.  Signer verifies that he/she has read the within pleading and that it is true and correct to the best of signer's knowledge, information and belief.  To the extent that the contents of the pleadings are that of counsel, verifier has relied upon counsel in taking this Verification.  This Verification is made subject to the penalties of 18 Pa. C.S. Sec. 4904, relating to unsworn falsification of authorities.

BY: _____

Christine Pembleton

## **VERIFICATION**

I, Robert A. Huber, do hereby state that I am the attorney representing the party filing the foregoing pleading. I verify that I have read the attached pleading, that the information contained within the pleading is based upon information furnished to counsel and or gathered by counsel. I verify that the information contained within this pleading is true and correct to the best of my knowledge, information and belief. This verification is made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

BY: _____

Robert A. Huber

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania that require filing confidential information and documents differently than non-confidential information and documents.

Respectfully submitted,

Robert A Huber, Esquire

Attorney ID: 58948

Attorney for Plaintiff, Christine Pembleton

# EXHIBIT "B"



